# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| SYSTIME COMPUTER CORP., ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> WIRECO WORLDGROUP, INC., ) <br> ) <br> Respondent. ) | <br><br><br><br>Case No. 4:11-cv-09036-MC--HFS<br><br>District Judge Howard F. Sachs |

## MEMORANDUM IN SUPPORT OF SYSTIME'S PETITION TO STAY THE EXECUTION OF AND VACATE ARBITRATION AWARD

The arbitration award entered in favor of Defendant WireCo WorldGroup, Inc. ("WireCo") cannot stand as a matter of law because Arbitrator Vogel exceeded his express contractual powers. The arbitrator issued an award resolving non-arbitrable claims and capriciously awarded damages that the parties explicitly precluded in the arbitration agreement. Plaintiff Systime Computer Corporation ("Systime") initiated the arbitration proceedings pursuant to an arbitration clause in a consulting services agreement between it and WireCo in which the parties agreed to arbitrate disputes arising under the agreement. The agreement further limited the scope of damages that a party could procure in such an arbitration. Systime sought unpaid computer consulting fees.

WireCo counterclaimed, seeking damages for an alleged failed software implementation. Then, two months after the deadline the arbitrator set for amending claims, WireCo sought to amend its counterclaim to include tort claims for "gross negligence" and "reckless indifference" as a predicate to recovering punitive damages against Systime. Without identifying the source of his authority for resolving the tort claims or for awarding punitive or consequential damages (damages expressly excluded

by the agreement authorizing the arbitration), Arbitrator Vogel permitted WireCo to amend its claims over Systime's objection.

Ultimately, Arbitrator Vogel rubber-stamped WireCo's claim that it was entitled to recover $3,082,026 in "actual" damages and $1,000,000 in punitive damages (the full measure of both categories of damage sought in post-hearing briefing). In issuing this Award, the Arbitrator grossly exceeded his authority by (i) resolving tort claims the parties did not agree to arbitrate and (ii) awarding damages that cannot be reconciled with the arbitration agreement between the parties, "effectively 'dispens[ing] his own brand of industrial justice'". If this Court does not vacate the award to negate Arbitrator Vogel's overzealous exercise of authority he was never afforded, Systime will suffer catastrophic consequences.

## BACKGROUND

In late 2007, Systime and WireCo entered into a Consulting Services Agreement (the "CSA") whereby WireCo retained Systime's services to assist it in the implementation of enterprise resource planning ("ERP") software. (The CSA is attached hereto as Exhibit A.) The CSA outlined the parties' respective responsibilities and included various provisions concerning dispute resolution and allocation of risk. In particular, the parties agreed to the application of Missouri law and to resolve all disputes "that arise under" the CSA in arbitration pursuant to the rules of the American Arbitration Association. (Ex. A, ¶ 10.) Systime and WireCo also agreed that damages in any arbitration would be limited to "the amount of fees paid…under the applicable Work Order", and "[i]n no event, shall either party be liable for any indirect, incidental, special,

or consequential damages, or damages for loss of profits, revenue, data, or use. . . ." (Ex. A, ¶ 5.)

Roughly one year after the commencement of the project, the parties' relationship began to sour because the implementation was behind schedule and Systime's bills were disputed and in arrears. To resolve all of the outstanding disputes, the parties agreed to form a comprehensive new work order, the Summary Change Order Agreement (hereinafter the "SCOA"), that stated "[a]ll services to be provided from and after the date hereof are stated herein or shall be stated in a separate Statement of Work or change order signed by each of the parties after the date hereof." (The SCOA is attached hereto as Exhibit B). The SCOA further allowed WireCo to apply an $800,000.00 credit against project work, $575,000 of which could be applied to the past due receivable balance, with the remaining $225,000.00 available to offset post-SCOA fees. (*See id*., ¶4). Pursuant to the express terms of the SCOA, WireCo's use of the $575,000 "credit toward satisfaction of such outstanding invoices constitute[d] WireCo's acceptance of such services and deliverables performed" and "no further services are due to be performed by Systime under the SOW." (*Id*.) The parties never executed another work order after the comprehensive SCOA. Moreover, WireCo never made any payments under the SCOA.

On August 11, 2009, Systime filed an Arbitration Demand for $2,301,400 in unpaid fees and expenses. WireCo responded and filed a Counterclaim on September 9, 2009. Then, on February 14, 2011, after the deadline to amend claims, WireCo sought leave to amend its Counterclaim to add a claim for punitive damages based upon claims of gross negligence and reckless indifference. Arbitrator Vogel granted WireCo's motion

for leave, over Systime's objection, on March 4, 2011. (The Order is attached hereto as Exhibit C.)

After a hearing in June 2011 and post-hearing briefing, Arbitrator Vogel issued his award on November 3, 2011. (The Award is attached hereto as Exhibit D.) The Award not only awarded WireCo damages for claims not arbitrable (*i.e.*, tort claims for gross negligence and reckless indifference) but also awarded damages expressly excluded by the parties' agreement to arbitrate (*i.e.*, punitive and consequential damages and damages in excess of the amount paid under the applicable work order). In particular, Arbitrator Vogel awarded WireCo "actual damages" of $3,082,026 and punitive damages of $1,000,000. (Ex. D.) He then netted that award against Systime's claim of unpaid fees to reach a net award to WireCo in the amount of $2,145,125. (*Id*.)

## ARGUMENT

This Court should vacate Arbitrator Vogel's award pursuant to 9 U.S.C. § 10(a)(4) because he exceeded his powers. As described herein, Arbitrator Vogel both awarded damages on non-arbitrable claims and for categories of damages expressly excluded by the agreement from which he derived his power.

**I. The Standard of Review**

Section 10(a)(4) of the Federal Arbitration Act (9 U.S.C. § 10(a)) provides that a district court may vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." *See also Hall Street Assoc., LLC, v. Mattel*, 552 U.S. 576 (2008); *Med. Shoppe Int'l v. Turner Invs.*, 614 F.3d 485, 489 (8th Cir. 2010).

Although the Federal Arbitration Act generally favors the binding resolution of disputes through arbitration, the scope of an arbitration clause remains "a matter of contract between the parties; it is a way to resolve those disputes -- *but only those disputes* -- that the parties have agreed to submit to arbitration." *First Options v. Kaplan*, 514 U.S. 938, 943 (U.S. 1995) (emphasis added); *citing AT&T Technologies v. Comm. Workers*, 475 U.S. 643, 649 (1986). The federal policy favoring arbitration "does not operate without regard to the intent of the contracting parties, for arbitration is a matter of consent, not of coercion." *Keymer v. Management Recruiters Int'l, Inc.,* 169 F.3d 501, 504 (8th Cir. 1999). "Missouri courts are not alone in refusing to enforce contractual agreements [to arbitrate] beyond claims based on contract performance." *Serv. Vending Co. v. Wal-Mart Stores, Inc.*, 93 S.W.3d 764, 768 n.3 (Mo. App. S.D. 2002) (citing cases from other jurisdictions); *Greenwood v. Sherfield*, 895 S.W.2d 169, 174 (Mo. Ct. App. 1995) (tort claim for conversion not related to a contract containing an arbitration clause because it was not based upon an alleged breach of the contract and because it did not, and did not need to, invoke the contract). Thus, the contract between the parties – in this case the CSA – governs what can be arbitrated.

II. **The Arbitrator Exceeded His Authority by Issuing an Award on Tort Claims the Parties Did Not Agree to Arbitrate**

Arbitrator Vogel's award of $3,082,026 on Systime's tort claim and his award of $1,000,000 in punitive damages clearly exceeded his authority as defined in the CSA. Not only does Missouri law prohibit the award of punitive damages in commercial breach of contract cases (*see, e.g.*, *Peterson v. Continental Boiler Works, Inc.*, 783 S.W.2d 896, 902 (Mo. 1990)), but also the CSA itself prohibits the award of such damages "whether in an action in contract or tort" (Ex. A, ¶5.) The $1,000,000 punitive damages award is

therefore beyond the scope of Arbitrator Vogel's authority to issue. It also is based on a non-arbitrable tort claim. Arbitrator Vogel therefore did not possess the authority to issue an award on punitive damages.

> A. **The Court Reviews Whether the Parties Agreed to Arbitrate WireCo's Tort Claims *De Novo*.**

While the parties agreed to arbitrate "any disputes arising under this Agreement that they cannot resolve," the CSA does not include a provision that governs how to resolve disagreements on the arbitrability of disputes. (*See* Ex. A, ¶ 10.) In the absence of such an agreement, "…the court should decide that question [of arbitrability] just as it would decide any other question that the parties did not submit to arbitration, namely, independently." *First Options v. Kaplan*, 514 U.S. 938, 943 (1995); *see also Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. en banc 2003) ("An appellate court's review of the arbitrability of a dispute is *de novo*.")

> B. **The Parties Did Not Agree to Arbitrate Tort Claims.**

Systime did not consent to an arbitral resolution of tort claims that its consultants were professionally negligent and exhibited "reckless indifference towards WireCo's rights and interests." (Ex. D, ¶ 5). The Court need look no farther than the CSA itself to determine the parties' intentions. The CSA provides only that the parties would arbitrate "any dispute arising under this Agreement." (Ex. A, ¶ 10). The CSA provides certain limited warranties (*e.g.*, to perform services "in a professional manner consistent with generally accepted industry standards.") (*Id*., ¶ 4). WireCo's tort claims do not arise under these contractual warranties and are therefore not arbitrable.

WireCo's professional/gross negligence claims neither implicate any terms of the CSA nor raise issues "the resolution of which requires reference to or construction of

637162v1

some part of" the limited warranty. *See Rhodes v. Amega Mobile Home Sales, Inc.*, 186 S.W.3d 793, 798-799 (Mo. Ct. App. 2006) (product liability claims did not arise out of warranty agreement that was limited to structural defects of a mobile home even though the arbitration clause covered disputes "resulting from or arising out of the design [or] manufacture" of a mobile home); *citing Northwest Chrysler-Plymouth, Inc. v. DaimlerChrysler Corp.*, 168 S.W.3d 693, 696 (Mo. Ct. App. 2005); *see also Seaboard Corp. v. Grindrod Ltd.*, 248 S.W.3d 27, 33 (Mo. Ct. App. 2008) (declining to compel arbitration of tort claims that "could have been brought even if the Agreement had never been signed.") While the terminology of Systime's warranty – that it would perform services in a "professional manner" – may resemble the duty a professional would need to meet in order to defeat a professional negligence claim, the terms of the CSA would neither aid in giving substance to those standards nor have any bearing on the claim whatsoever. *See Missouri & N. Ark. R.R. v. Branson Scenic Ry.*, 3 S.W.3d 869, 871-72 (Mo. App. S.D. 1999) (negligence claims would be determined according to common law principles of duty, breach, causation, and damages and were therefore unrelated to the parties' agreement).

Moreover, just because the tort claims would not have arisen if the parties had not established a relationship through the CSA does not mean that the tort claims somehow become arbitrable. That "but-for" nexus is not sufficient to bring the tort claim within the reach of an arbitration agreement. *Greenwood,* 895 S.W.2d at 174 ("The relationship between the tort claim and the contract is not satisfied simply because the dispute would not have arisen absent the existence of the contract between the parties.") No basis exists for drawing a substantive connection between the professional/gross negligence claims

and the CSA. Accordingly, the claims do not arise under the CSA and should not have been arbitrated.

## III. Arbitrator Vogel Exceeded His Authority by Ignoring Contractual Limitations on Damages Set Forth in the CSA

The Award also should be vacated because the CSA directly precludes the damages awarded to WireCo. Systime recognizes that the Arbitrator's Award is entitled to deference, but deference "is not the equivalent of a grant of limitless power," *Stark v. Sandberg, Phoenix & von Gontard, P.C.*, 381 F.3d 793, 799 (8th Cir. Mo. 2004); *quoting Leed Architectural Prods., Inc. v. United Steelworkers of Am., Local 6674*, 916 F.2d 63, 65 (2d Cir. 1990), and "courts are neither entitled nor encouraged simply to 'rubber stamp' the interpretations and decisions of arbitrators." *Id.*; quoting *Matteson v. Ryder Sys. Inc.*, 99 F.3d 108, 113 (3d Cir. 1996). Arbitral decisions may be found unenforceable if the "arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice.'" *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1767-1768 (2010); citing *Major League Baseball Players Assn. v. Garvey*, 532 U.S. 504, 509 (2001) (*per curiam*); *quoting Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960).

Arbitration decisions may be vacated on the § 10(a)(4) ground that the arbitrator "exceeded [his] powers" if, as here, the arbitrator fails to adhere to the task to which the parties selected him -- "to interpret and enforce a contract, not to make public policy." *Stolt-Nielsen*, 130 S. Ct. at 1767-1768 (overturning a panel decision that put aside the parties' agreement and "impose[d] its own view of sound policy regarding class arbitration.")

WireCo did not address either the CSA or SCOA in its initial post-hearing brief on damages with good reason: the contractual provisions that limited the arbitrator's authority to award certain categories of damages could not be reconciled with the damages WireCo requested. The CSA expressly precludes the award of *any* "indirect, incidental, special, or consequential damages, or damages for loss of profits, revenue, data, or use…whether in an action in contract or tort." (Ex. A, ¶ 5.) These excluded damages cover every category of damages WireCo requested with the exception of a handful of direct payments made to a vendor for certain repair work. In addition, the CSA further limits the arbitrator's authority to award damages to "the amount of fees paid by [WireCo], under the applicable Work Order". (*Id*.) WireCo did not make any payments to Systime under the applicable work order – the SCOA – which is plainly the controlling work order because it states "[a]ll services to be provided from and after the date hereof are stated herein or shall be stated in a separate Statement of Work or change order signed by each of the parties after the date hereof." (Ex. B, ¶ 1). Accordingly, Arbitrator Vogel's damage award should be vacated because it cannot be justified under a reasoned reading of the parties' agreements and Missouri law.

### A.  The CSA and Missouri Law Expressly Prohibit the Award of Consequential/Incidental Damages For "Diminution of Value"

In its post-hearing Brief, WireCo submitted that it was entitled to recover the following damages:

```
Damages/Deductions from Value:
    Rebuilt Costs                            $1,126,225
    Post Go-Live Employee Time               $95,582
    CNC time and expenses with no value      $595,461      ($569,440
                                                           alternative calculation)
    Extra time by Systime post Go-Live       $514,758      ($302,050
                                                           alternative calculation)
```

| | |
|---|---|
| Additional decrease in value of Systime services | $750,000 |
| **Total Deductions/Damages** | $3,082,026 |
| **Resulting Net payment by Systime** | $1,142,125 |

While Systime contends that these damages were asserted without a competent valuation or factual witness, Systime realizes the Court will not review the record to reopen consideration of the merits of those issues. However, what is without question is that all of the damages, with the exception of a small portion of the "Rebuilt Costs", constitute consequential damages that were beyond Arbitrator Vogel's authority to award.

In its post-hearing briefing, WireCo contended that the Arbitrator should utilize his latitude to award it both costs of repair ($1,126,225) and "diminution in value" damages ($1,955,801) to yield the $3,082,026 total figure. These "diminution in value" damages not only are expressly precluded by Missouri law when awarding costs of repair, but also – and more importantly – were contractually beyond Arbitrator Vogel's authority to issue under the CSA. *See* CSA, ¶ 5 (precluding consequential and incidental damages); *see also Trident Group, LLC v. Miss. Valley Roofing*, 279 S.W.3d 192, 200 (Mo. Ct. App. 2009) (holding that diminution in value damages are not appropriate when a plaintiff can recover costs of repair). In particular, the $750,000 for "intangible costs and stress and strain on the business" cannot be categorized as anything but consequential, indirect or "damages for loss of profits, revenue, data or use" that the CSA expressly prohibited Arbitrator Vogel from awarding.

Likewise, the $95,582 in Post Go-Live Employee Time cannot be categorized as anything but consequential and incidental in nature. In fact, the case WireCo cited as authority for the notion that such employee salaries could be recovered as mitigation

costs – *In re Parkview-Gem, Inc.*, 465 F. Supp. 629 (W.D. Mo. 1979) – expressly categorizes them as consequential following "from the doctrine of forseeability first announced in *Hadley v. Baxendale*…codified in the Restatement of Contracts, § 336(2)." *Id*. at 636-637; *see* Ex. E, p. 24. Disregarding his mandate from the CSA, Arbitrator Vogel exceeded his authority and awarded WireCo such consequential damages.

Even if the CSA authorized Arbitrator Vogel to award consequential, indirect or incidental damages (which it does not), awarding both costs of repair damages and diminution in value damages is so outrageous that it constitutes him doling out punitive industrial justice rather than abiding by the CSA and the law. *See, e.g.*, *Stolt-Nielsen*, 130 S. Ct. at 1767-1768. By doing so, Arbitrator Vogel was not "even arguably construing or applying the contract [or the law] and acting within the scope of his authority." *Crawford Group, Inc. v. Holekamp*, 543 F.3d 971, 976 (8th Cir. 2008).

The CSA required Arbitrator Vogel to apply Missouri law (*see* Ex. A, ¶ 10), and Missouri law is clear that plaintiffs cannot recover both costs of repair *and* diminution of value damages. "Contract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed." *See* RESTAT 2D OF CONTRACTS, § 347(a); citing § 344(1)(a); *see also* 3 E. ALLAN FARNSWORTH, FARNSWORTH ON CONTRACTS § 12.9 (1990) (same). The general rule for calculating damages for a breach of contract is to award the non-breaching party "the cost of repairing or replacing the defective work." *Dubinsky v. United States Elevator Corp.*, 22 S.W.3d 747, 751-752 (Mo. Ct. App. 2000); citing *Ken Cucchi Construction, Inc, v O'Keefe*, 973 S.W.2d 520,

527 (Mo.App.E.D. 1998). However, if the cost of repair or replacement would introduce economic waste, then the proper measure of damages is the diminished value of the property because of the defective work. *Trident Group, LLC v. Miss. Valley Roofing*, 279 S.W.3d 192, 200 (Mo. Ct. App. 2009) ("Unless Defendant presented evidence that the cost of repair or replacement would constitute economic waste, the proper measure of damages could not have been the diminished value of the property due to the defective work"); *Smart v. Tidwell Ind.,* 668 S.W.2d 605, 609 (Mo. Ct. App. 1984) ("when the evidence shows the cost of repair or restoring the property to its represented condition to be significantly less than the diminution of value, the former is the proper measure of damages whether the action is based on tort, breach of contract, implied or express warranty.") In fact, the Missouri Approved Instructions ("MAI") emphasize that the costs of repair are an "alternative" to damages for diminution of value. *See* MAI 4.02, 70.02(b) and comments to 4.02(a) (diminution of value an alternative to cost of repair; reversible error to give both); *see also Hensic v. Afshari Enterprises, Inc.*, 599 S.W.2d 522, 525 (Mo. Ct. App. 1980) ("In the present case, we need not and do not reach a determination of the correct rule for deciding whether the damages must be measured by the 'cost of repair' or the 'diminution in value'; nor do we intend any implied comment on what factors are relevant and determinative in <u>deciding which of these two methods</u> of measuring damages is to be used in a given fact situation.") By awarding WireCo damages for both costs of repair ($1,126,225) and "diminution in value" ($1,955,801), the Arbitrator exceeded his authority by putting aside the mandate to apply Missouri law in addition to awarding diminution in value damages that are incidental, indirect and consequential in nature.

B.  **The Award of Any Damages Whatsoever Violated Arbitrator Vogel's Authority Under the CSA Because Nothing Was Paid Under the Applicable Work Order**

Arbitrator Vogel had no authority whatsoever to issue more than $225,000 in damages because that was all that WireCo put toward work under the SCOA –the applicable Work Order.  The SCOA expressly provides that WireCo accepted in full all pre-SCOA services Systime provided in exchange for a substantial credit.  (Ex. B, p. 5, ¶4(1).)  By applying $575,000 of the $800,000 credit to pre-SCOA work, WireCo agreed that "no further services are due to be performed by SYSTIME under the SOW" and acknowledged that "its use of the credit toward satisfaction of such outstanding invoices constitutes WireCo's acceptance of such services and deliverables performed." (*See id*.) The SCOA further provided that the credit would resolve the parties' dispute regarding the payment for services rendered under the CSA/SOW.  (*See id*., p. 4, ¶3.)  The only "payment" WireCo made toward post-SCOA services was to apply the remaining $225,000 of the credit toward such services.

The CSA limits Arbitrator Vogel's authority to award damages to "the amount of fees paid by [WireCo], under the applicable Work Order". (Ex. A, ¶5.)  Such limitations of liability between sophisticated parties in a commercial setting are universally enforced. *Purcell Tire & Rubber Co. v. Executive Beechcraft, Inc.*, 59 S.W.3d 505, 508 (Mo. 2001) ("Sophisticated parties may contractually limit future remedies"); see also *Liberty Financial Management Corp. v. Beneficial Data Processing Corp.*, 670 S.W.2d 40, 48 (Mo. Ct. App. 1984). When a contract such as the CSA is clear, the terms of the contract must be enforced as written. *Malan Realty Investors v. Harris*, 953 S.W.2d 624, 627 (Mo. 1997); citing *CIT Group/Equip. v. Integrated Fin. Serv.*, 910 S.W.2d 722, 729 (Mo. App.

1995). Here, the only possible payment WireCo made was the $225,000 credit. Thus, Arbitrator Vogel was only authorized to issue an award to WireCo in that amount. By awarding WireCo more than $3.1 million, he grossly exceeded his contractual power. For this reason alone, the award must be vacated.

III.  **The Award Cannot Be Reconciled with Missouri Public Policy**

Finally, the Supreme Court recognizes a narrow public policy exception that permits the district court to decline to enforce an arbitration award that contravenes "explicit public policy." *W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber Workers*, 461 U.S. 757, 766 (1983). The "public policy, however, must be well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Id.*; *quoting Muschany v. United States*, 324 U.S. 49, 66 (1945). Public policy is "well-defined and dominant" if it may be ascertained from law and legal precedent. *United Paper Workers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 43 (1987). A public policy violation arises when an arbitration decision conflicts with other laws and legal precedents. *Id.* Arbitrator Vogel violated explicit and well-defined public policies of Missouri both by failing to enforce the settlement terms embodied in the SCOA.

By awarding damages for the value of services Systime performed prior to the SCOA, Arbitrator Vogel ignored Missouri case law requiring him to give effect to settlement agreements. His failure to enforce the parties' settlement contravenes the long recognized public policy favoring voluntary settlement of disputes. *E.g.*, *St. Louis Min. & Mill. Co. v. Montana Mining Co.*, 171 U.S. 650, 656 (1898) ("[S]ettlement of matters in litigation, or in dispute, without recourse to litigation, are generally favored); *see, e.g.*; *Kerperien v. Lumberman's Mut. Cas. Co.*, 100 S.W.3d 778, 781 (Mo. 2003) ("[Missouri

has a] long-standing public policy of encouraging settlement"); *Sanger v. Yellow Cab Co.*, 486 S.W.2d 477, 481 (Mo. 1972) (public policy compelled a finding that settlements should be honored in order to encourage settlement of claims). *Daniel v. Ind. Mills & Mfg.*, 103 S.W.3d 302, 316 (Mo. Ct. App. 2003) (public policy is to encourage settlements).

As set forth above, both the United States Supreme Court and Missouri law expressly recognized the compelling public policy favoring the finality of settlement agreements. To permit WireCo to gain the benefit of the bargain set forth in the SCOA and then to require Systime to disgorge fees paid to it for consulting services that WireCo fully accepted, violates both the letter and the spirit of the policy in favor of enforcing settlements. This Court must prohibit the Arbitrator from overriding the parties' intent at the time of the SCOA and vacate the Award.

## CONCLUSION

For the reasons set forth above, Systime requests that the Court enter an order vacating the Award because the Arbitrator exceeded his authority and violated public policy by disregarding the CSA and awarding WireCo damages the agreement barred on claims the parties did not agree to arbitrate.

## STATEMENT REGARDING ORAL ARGUMENT

Systime respectfully requests that this Court grant oral argument, as the issues presented by its Petition and WireCo's likely opposition raise significant legal issues, the resolution of which could be aided by oral argument.

Respectfully submitted:

SEIGFREID, BINGHAM, LEVY,
 SELZER & GEE, P.C.


By:/s/ Rachel H. Baker
    Rachel H. Baker, #42200
    911 Main St., Suite 2800
    Kansas City, MO 64105
    Telephone:  (816) 421-4460
    Facsimile:  (816) 474-3447
    rbaker@sblsg.com

ATTORNEYS FOR PLAINTIFF
SYSTIME COMPUTER CORP.