IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

SYSTIME COMPUTER CORP.,           )
                                  )
                  Plaintiff,      )
                                  )
v.                                )          Case No.: 11-9036-MC-W-SOW
                                  )
WIRECO WORLD GROUP, INC.,         )
                                  )
                  Defendant.      )


**<u>ORDER</u>**

Before the Court is Systime Computer Corp.'s ("Systime") Petition to Stay the Execution

of and Vacate Arbitration Award (Doc. #1) and WireCo WorldGroup, Inc.'s ("WireCo") Answer

and Counterclaim/Cross-Motion (Doc. #13). For the reasons stated below, Systime's motion is

denied and WireCo's motion is granted.

I. <u>Background</u>

This case involves an arbitration award in WireCo's favor to the tune of just over four

million dollars. The parties submitted to an arbitrator a dispute concerning Systime's claim against

WireCo for unpaid fees and expenses, and WireCo's counterclaim against Systime for damages

based on gross negligence and reckless indifference. Systime asks the Court to vacate the

arbitrator's decision, arguing that he exceeded his authority and that his award was against public

policy. WireCo has counterclaimed for enforcement of the award.

In view of the limited issues presented, many of the factual details are irrelevant to the

Court's discussion. Systime is in the business of developing, supporting, and marketing complex

enterprise resource planning software for businesses. WireCo is an international manufacturer and

seller of steel rope and related components. In October 2007 the parties entered into a Consulting

Services Agreement ("CSA"), whereby Systime would implement and install an enterprise-wide software application known as the J.D. Edwards EnterpriseOne 8.12 ERP system at WireCo's manufacturing facilities. Suffice it to say that the software program was complex; it provided an array of applications that help businesses integrate and manage its human resources, financial, supply chain, manufacturing, and customer functions. The CSA outlined the parties' respective responsibilities and included provisions concerning dispute resolution and allocation of risk. The CSA contains the following terms and provisions that are relevant to the pending motion. Under "Governing Law and Jurisdiction," the policy provides that,

> This Agreement, and *all matters arising out of or relating to this Agreement*, *shall be governed by the laws of the state of Missouri* . . . The parties agree that any disputes arising under this Agreement that they cannot resolve, other than disputes concerning Sections 6, and 7, shall be subject to binding arbitration pursuant to the rules of the American Arbitration Association. Any arbitration shall be filed and heard in Kansas City, Missouri. The decision of the arbitration panel may be enforced by any court of competent jurisdiction. . . .

Also contained in the CSA was a section entitled "Limitation of Liability." This section stated:

> In no event shall either party be liable for any indirect, incidental, special, or consequential damages, or damages for loss of profits, revenue, data, or use, incurred by either party or any third party, whether in an action in contract or tort, even if the other party or other person has been advised of the possibility of such damages. SCC's liability for damages under this Agreement shall in no event exceed the amount of fees paid by Company, under the applicable Work Order. . . .

After about one year, the parties relationship deteriorated. Systime claimed that WireCo failed to pay its bills, and WireCo contended that Systime rendered subpar work, among other things. On August 11, 2009, Systime filed a demand for arbitration seeking $2,301,400 in unpaid fees and expenses. WireCo responded and filed a counterclaim, requesting damages amounting to the diminished value of the services that Systime provided, costs of repairing Systime's work,

damages for worthless services, and inconveniences caused by Systime's defective performance. Subsequently, WireCo amended its counterclaim to add a claim for punitive damages based upon claims of gross negligence and reckless indifference. The parties went to arbitration for eight days in June 2011. On November 3, 2011, the arbitrator awarded WireCo actual damages of $3,082,026 and punitive damages of $1,000,000. He then netted that award against Systime's claim of unpaid fees, which reduced the net award to $2,145,125.

## II. Standard

As the parties note, judicial review of an arbitration award is extremely limited. See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 130 S.Ct. 1758, 1767 (2010). In reviewing an arbitrator's award, the district court "is restricted by the great deference accorded arbitration awards." Williams v. Nat'l Football League, 582 F.3d 863, 883 (8th Cir. 2009); see also Boise Cascade Corp. v. Paper Allied-Indus., Chem. & Energy Workers, 309 F.3d 1075, 1080 (8th Cir. 2002) (when reviewing arbitration award, court must "accord an extraordinary level of deference to the underlying award itself"). In Boise Cascade Corp., the Eighth Circuit observed that "federal courts are not authorized to reconsider the merits of an arbitral award, 'even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract.'" 309 F.3d at 1080 (citations omitted). To be sure, even if the Court believes that the arbitrator committed a serious error, the Court must confirm the award so long as the arbitrator "is even arguably construing or applying the agreement." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987); Boise Cascade Corp., 309 F.3d at 1080.

The Eighth Circuit has instructed that, even though an arbitrator has broad authority, "the

-3-

arbitrator is not wholly free from judicial review. An arbitrator's award can be vacated for the reasons provided in the Federal Arbitration Act (FAA)." Williams, 582 F.3d at 883 (quoting Schoch v. InfoUSA, Inc., 341 F.3d 785, 788 (8th Cir. 2003), and citing 9 U.S.C. § 10(a)). The FAA authorizes the district court to vacate an arbitration award in four very limited situations: (1) where the award was procured through fraud; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10; Hall Street Assoc., LLC v. Mattel, 552 U.S. 576 (2008); Med. Shoppe Int'l v. Turner Invs., 614 F.3d 485, 489 (8th Cir. 2010).

Recently, the Eighth Circuit emphasized that a federal court may vacate an arbitration award only on the grounds listed in Sections 10 and 11 of the FAA. Medicine Shoppe Int'l., Inc., 614 F.3d at 488-89 (relying on Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576 (2008)). "We have previously recognized the holding in Hall Street and similarly hold now that an arbitral award may be vacated only for the reasons enumerated in the FAA." Id. at 489.

## III. Discussion

In its primary point, Systime argues that the arbitrator exceeded his authority in issuing an award on tort claims the parties did not agree to arbitrate. Specifically, Systime argues that the CSA specifically prohibited the award of such damages "whether in an action in contract or tort," and that Missouri law prohibits the award of punitive damages in a commercial breach of contract case. In essence, Systime argues that because WireCo submitted a non-arbitrable tort claim, any damages arising out of the tort claim should be vacated, as any award stemming from the non-arbitrable claim was beyond the arbitrator's authority. Systime further argues that WireCo's tort claims did not

-4-

Case 4:11-mc-09036-SOW   Document 21   Filed 06/18/12   Page 4 of 13

implicate any terms of the CSA, nor raise issues that "the resolution of which requires reference to or construction of some part of" the limited inquiry.

WireCo submits that the arbitrator did not exceed his authority in deciding the tort claims because: (1) Systime waived its right to challenge the arbitrability of WireCo's professional negligence and punitive damages claims; and (2) even if Systime could challenge the arbitrability, the CSA specifically granted the arbitrator the power to hear and render judgment on WireCo's negligence and punitive damages claims.

## A. Waiver

The Court first addresses WireCo's contention that Systime waived its right to challenge the arbitrability of the tort and punitive damages claims. The Court finds that Systime did not waive its ability to challenge the arbitrator's decision to arbitrate the negligence claims.

The Eighth Circuit has held that a party may not refuse to participate in arbitration or fail in arbitration "to raise a particular argument concerning the merits of the grievance and then later seek a judicial resolution of that same issue." Int'l Broth. of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp., 380 F.3d 1084, 1101 (8th Cir. 2004). The court of appeals went on to describe the methods by which a party who opposes arbitration could challenge an arbitrator's authority.

> [T]he party opposed to arbitration could (1) object to the arbitrators' authority, refuse to argue the arbitrability issue, and proceed to the merits of the agreement; (2) seek declaratory or injunctive relief from a court prior to commencement of arbitration; or (3) notify the arbitrators of a refusal to arbitrate altogether."

Id. (citing Local Union No. 36, Sheet Metal Workers' Int'l Assoc'n v. Atlas Air Conditioning, 926 F.2d 770, 771-72 (8th Cir. 1991)). While these three methods will allow a party to preserve its objection to the arbitrator's authority, the court of appeals also permits a party to preserve its argument relating to arbitrability by timely filing a motion to vacate. See id. at 1102 ("Accordingly,

we are bound to follow the clear language of <u>Atlas Air Conditioning</u>, and permit the timely filing of a motion to vacate as an alternative means for preserving an argument related to an issue of substantive arbitrability notwithstanding the lack of notice before the arbitrators.") (emphasis added).

WireCo contends, however, that <u>Hope Electric</u> was only limited to the unique facts of that case. <u>See id.</u> at 1103 ("Our holding, of course, is limited to the facts of this case."). In <u>Hope Electric</u>, however, the court of appeals explained (in the next sentence) that it would be inappropriate to allow a motion to vacate to serve as a method for preserving an argument in situations where, for example, the collective bargaining agreement *clearly* gave the arbitrator – not the courts – the authority to resolve issues of arbitrability. <u>Id.</u> (emphasis added). Here, unlike in the examples the <u>Hope Electric</u> court gave, the parties' agreement did not expressly apportion to the arbitrator the authority to resolve the underlying issues of arbitrability.

The facts presented here demonstrate that Systime vehemently disagreed with the arbitrator's decision to reach the merits of WireCo's negligence and punitive damages claims. Even if the Court did not consider Systime's briefs to the arbitrator as proof of its objection to the arbitrator's authority to decide the negligence and punitive damages claims, Systime's motion to vacate sufficiently preserved its argument related to the arbitrator's ability to decide said issues.

**B. The Parties Did Agree to Arbitrate Tort Claims**

Systime argues that it did not consent to an arbitral resolution of tort claims that its consultants were professionally negligent and exhibited "reckless indifference towards WireCo's rights and interests." Systime argues that the CSA clearly prohibits the tort claims that WireCo submitted in arbitration. Systime further states that WireCo's negligence claims did not implicate

-6-

any terms of the CSA nor raise issues that would require a resolution or construction of the CSA. Moreover, Systime argues that just because the tort claims would not have arisen if the parties had not established a relationship through the CSA, does not mean the tort claims became arbitrable.

On the other hand, WireCo argues that the CSA provided the arbitrator with the power to hear the tort claims because "any doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration." WireCo cites Greenwood v. Sherfield, 895 S.W.2d 169 (Mo. Ct. App. 1995) in support of its position. There, the issue was whether a claim for tortious interference must be submitted to arbitration in accordance with the parties' agreement providing for such submission of any controversy or claim arising out of their agreement. Id. at 174. The court reasoned that "[t]he relationship between the tort claim and the contract is not satisfied simply because the dispute would not have arisen absent the existence of the contract between the parties." The court held that arbitration was "compelled where a tort claim arises directly out of a dispute regarding the terms of the parties contractual relationship or where the statements giving rise to a tort claim are integrally linked to the contractual relationship between the parties." Id. at 174-75 (internal citations omitted).[1] Ultimately, in Greenwood, however, the Court found that the tortious conduct did not arise out of the parties' agreement because "the tortious conduct did not . . . arise out of a dispute relating to the terms of that contract." Id. at 175.

The Eighth Circuit has also found that arbitration may be compelled under "a broad arbitration clause . . . as long as the underlying factual allegations simply 'touch matters covered by'

---

[1] In light of Eighth Circuit precedent on how to determine whether a tort claim arising out of the parties' agreement may be submitted to arbitration, the Court need not consider the Florida case cited by WireCo, Giller v. Cafeteria of South Beach Ltd., LLP, 967 So.2d 240, 242 (Fla. Ct. App. 2007).

Case 4:11-mc-09036-SOW   Document 21   Filed 06/18/12   Page 7 of 13

the arbitration provision." PRM Energy Sys, Inc. v. Primenergy, LLC, 592 F.3d 830, 837 (8ᵗʰ Cir. 2010) (quoting 3M Co. v. Amtex Sec., Inc., 542 F.3d 1193, 1199 (8ᵗʰ Cir. 2008), in turn quoting Mitsubishi Motors Corp. v. Solar Chrysler-Plymouth, Inc., 473 U.S. 614, 625 n. 13 (1985)). Broadly worded arbitration clauses are also generally construed to cover tort claims as long as they arise from the "same set of operative facts covered by a contract between the parties to the agreement." CD Partners, LLC v. Grizzle, 425 F.3d 795, 800 (8ᵗʰ Cir. 2005); see also Gregory v. Electro-Mechanical Corp., 83 F.3d 382 (11ᵗʰ Cir. 1996); Kroll v. Doctor's Assocs., 3 F.3d 1167, 1170 (7ᵗʰ Cir. 1993) ("[A] plaintiff may not avoid an otherwise valid arbitration provision merely by casting its complaint in tort. The touchstone of arbitrability in such situations is the relationship of the tort alleged to the subject matter of the arbitration clause.") (internal quotations and citations omitted).

In this case, the negligence claims against Systime clearly arose out of and related to the parties' agreement for services under the CSA. For starters, the broadly worded arbitration clause in this case is one that courts have generally construed to cover tort claims arising from the same set of operative facts covered by the contract between the parties. Take, for example, the Tenth Circuit decision in P&P Industries. v. Sutter Corp., 179 F.3d 861 (10ᵗʰ Cir. 1999), where the court of appeals encountered an arbitration clause that stated, "[a]ny controversy, claim, or breach arising out of or relating to this Agreement" shall be arbitrable. Id. at 871. The Tenth Circuit found that the arbitration clause was broad enough to encompass tort claims that "arose out of, or relate to, the Agreement itself." Id. at 872. Here, the parties' agreement was worded similarly: "The parties agree that *any* disputes arising under this Agreement that they cannot resolve, other than disputes concerning Sections 6 and 7, shall be subject to binding arbitration. . . ." Systime argues that the agreement only provided certain limited warranties (i.e., to perform services in a professional

-8-

manner) and that the tort claims do not arise under these contractual warranties. The Court is unpersuaded.

In this case, the tort claims arose out of and are related to the parties' agreement for services under the CSA. The CSA sets forth the parties' rights and responsibilities. The negligence claims asserted by WireCo against Systime clearly had a connection with the parties' agreement under the CSA, as the negligence claims pertained directly to Systime's failure to perform its obligations under the CSA.

Moreover, under the section entitled "Limitation of Liability," the CSA states that no party shall be liable for "indirect, incidental, special, or consequential damages, or damages for loss of profits . . . when in an action in contract or *tort*. . . ." Hence, the parties' agreement contemplated that tort claims could be brought by a party, and that said claims would be subject to arbitration. Given the Eighth Circuit's strong preference for upholding arbitration awards in general, and its directives that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, the Court concludes that the negligence claims stated in this lawsuit were subject to the arbitration clause.

## C. Damages

### 1. Diminution of Value/Costs of Repair

Systime argues the arbitrator exceed his authority by ignoring the contractual limitations on damages as set forth in the CSA. Specifically, Systime contends that the CSA and Missouri law expressly preclude the award of consequential/incidental damages for "diminution of value" and "costs of repair."[2] Systime also argues that the arbitrator's award of any damages violated the

---

[2] Systime does not dispute that Missouri law would allow one or the other.

-9-

arbitrator's authority under the CSA because nothing was paid under the applicable work order.

The CSA states that, "[i]n no event shall either party be liable for *indirect, incidental, special, or consequential damages, or damages for loss of profits, revenue, data, or use,* incurred by either party or any third party, whether in an action in contract or tort. . . ."  Later the agreement – in the section entitled "Governing Law and Jurisdiction" – states that, "[t]his Agreement . . . shall be governed by the laws of the State of Missouri. . . ." and that "any disputes . . . shall be subject to binding arbitration subject to the rules of the American Arbitration Association."

Here, Systime argues that awarding damages for rebuilding costs and diminution of value was expressly precluded by Missouri law and the parties' agreement.  The arbitrator did not issue an award with his findings of fact and law, but instead gave only the amount of damages awarded to WireCo.  Thus, it is almost impossible for the Court to discern what the arbitrator's reasoning was for making his award.  However, given the extremely deferential standard of review, even if the arbitrator was legally incorrect in determining that these damages were acceptable under the CSA and Missouri law, the Court cannot vacate the award on this basis.  E.g., Electrolux Home Prods. v. United Auto. Aerospace & Agric. Implement Workers of Am., 416 F.3d 848, 855 (8th Cir. 2005). Moreover, in the underlying proceedings, the parties submitted extensive briefing on the topic of damages.  And because the parties' briefs included extensive legal arguments on the availability or the appropriateness of awarding rebuilding costs and diminution of value damages, it appears more likely that the arbitrator decided that the law allowed for him to award these damages.  And, as stated, even if the arbitrator wrongfully decided the law (and the Court makes no determination on whether he was correct), the Court is unable to vacate the arbitrator's award on such a basis.  Id.

> We may not set an award aside simply because we might have interpreted the
> agreement differently or because the arbitrators erred in interpreting the law or in

-10-

determining the facts. Although this result may seem draconian, the rules of law limiting judicial review and the judicial process in the arbitration context are well established and the parties here, both sophisticated in the realms of business and the law, can be presumed to have been well versed in the consequences of their decision to resolve their disputes [via arbitration].

UHC Mngmt. Co. v. Computer Sciences Corp., 148 F.3d 992, 997 (8th Cir. 1998) (citing Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743, 751 (8th Cir. 1986)). Therefore, the Court concludes that the arbitrator did not exceed his authority in awarding damages for rebuilding costs and diminution of value damages.

  2. *Punitive Damages*

The language of the CSA states that "[i]n no event shall either party be liable for *indirect, incidental, special, or consequential damages, or damages for loss of profits, revenue, data, or use,* incurred by either party or any third party, whether in an action in contract or tort. . . ." The CSA - under the section "Governing Law and Jurisdiction" – states that, "[t]his Agreement . . . shall be governed by the laws of the State of Missouri. . . ." and that "any disputes . . . shall be subject to binding arbitration subject to the rules of the American Arbitration Association." Systime argues that this language in the CSA does not allow for punitive damages; it also argues that Missouri law does not allow punitive damages in commercial breach of contract cases. See Peterson v. Continental Boiler Works, Inc., 783 S.W.2d 896, 902 (Mo. 1990).

The Eighth Circuit in Stark v. Sandberg, Phoenix & von Gontard, P.C., 381 F.3d 793 (8th Cir. 2004), held that a damage clause in an arbitration agreement, providing that both parties waived their rights to punitive damages to the fullest extent permitted by Missouri law, could not be used to insulate the wrongdoer from liability for intentional torts or gross negligence. In Stark, the parties' arbitration agreement stated that the "borrower and lender expressly waive any right to claim

-11-

punitive damages to the fullest extent permitted by law." <u>Id.</u> at 800 (emphasis in original omitted). The court of appeals explained that this agreement "only effected a *limited* waiver of punitive damages, that is, punitive damages were waived only if the governing law permitted such a waiver. Conversely, if the law did not permit the waiver of punitive damages, the arbitration agreement unambiguously preserved the right to claim them." <u>Id.</u> The court of appeals articulated the rule in Missouri: "there is no question that one may never exonerate oneself from future liability for intentional torts or for *gross negligence*. . . ." <u>Id.</u> (citing <u>Alack v. Vic Tanny Int'l of Mo., Inc.</u>, 923 S.W.2d 330, 337 (Mo. 1996) (emphasis added) (citing <u>Liberty Fin. Mgmt. Corp. v. Beneficial Data Processing Corp.</u>, 670 S.W.2d 40, 48 (Mo. Ct. App. 1984))). Ultimately, the court of appeals determined that since Missouri would not allow a prospective waiver of punitive damages for an intentional tort or gross negligence, that the arbitrator did not exceed his authority when he awarded punitive damages.

Contrary to Systime's argument, the CSA governing the parties' agreement says nothing about precluding punitive damage awards and Systime's strained interpretation is not logical. Further, Systime's argument that Missouri courts do not allow punitive damages for breach of contract cases is without merit, as the arbitrator awarded WireCo damages for gross negligence, not based upon a breach of the contract.

As the <u>Stark</u> case illustrates, Missouri law does not allow a party to "exonerate oneself from future liability for . . . gross negligence." <u>Stark</u>, 381 F.3d at 800. Thus, even if the CSA did limit the ability of the arbitrator to award punitive damages, Missouri law would strictly prohibit such a waiver. Accordingly, the arbitrator did not exceed his authority in awarding punitive damages to WireCo.

-12-

**D.  Public Policy**

Systime also argues that the Court should vacate the award because it contravenes public policy.  This argument is unpersuasive.  The Eighth Circuit has observed that, post <u>Hall Street</u>, the grounds found in Section 10 of the FAA are the exclusive grounds for vacating arbitration awards; that is, common law grounds for vacating arbitration awards are no longer cognizable.  <u>See</u> <u>Med. Shoppe Int'l</u>, 614 F.3d at 489 (claim that arbitrator manifestly disregarded the law is no longer cognizable post- <u>Hall Street</u>).  Therefore, the Court rejects Systime's public policy argument.

IV.  <u>Conclusion</u>

Accordingly, it is hereby

ORDERED that Systime's Petition to Stay the Execution of and Vacate Arbitration Award (Doc. #1) is denied.  It is further

ORDERED that WireCo's Motion to Confirm the Arbitration Award (Doc. #13) is granted.


        /s/ Scott O. Wright
        SCOTT O. WRIGHT
        Senior United States District Judge

DATED:     6/18/2012